1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10  TRINA KOISTRA; and LARRY         CASE NO. 16cv2539-GPC(AGS)
    FORD,
11
                         Plaintiffs,  **ORDER GRANTING IN PART AND**
12       v.                           **DENYING IN PART**
                                      **DEFENDANTS' MOTION TO**
13                                    **DISMISS WITH LEAVE TO**
                                      **AMEND**
14  COUNTY OF SAN DIEGO;
    PLUTARCO VAIL; and DOES 1         [Dkt. No. 34.]
15  through 50, inclusive,
16                       Defendants.

17
18          Before the Court is Defendants County of San Diego and Plutarco Vail's motion
19  to dismiss Plaintiffs' first amended complaint ("FAC"). (Dkt. No. 34.) Plaintiffs filed
20  an opposition, and Defendants filed a reply. (Dkt. No. 36, 38.) Based on the reasoning
21  below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss
22  with leave to amend.
23                                **Background**
24          Around January 8, 2016, Plaintiff Trina Koistra ("Koistra") went to a nail salon
25  in El Cajon, California. (Dkt. No. 26, FAC ¶ 15.) She was waiting for a friend to pick
26  her up and bring her home; however, her ride never showed up. (Id. ¶ 16.) By chance,
27  she saw a friend near the nail salon who told her he could get her a ride home. (Id. ¶
28

17.) The friend called a friend, named Fay[1], who agreed to drive her home. (Id. ¶ 18.) Koistra got home close to 9 p.m. (Id. ¶ 20.) Since it was late, Fay asked if he could sleep on the couch, and she agreed. (Id. ¶ 21.) Koistra's boyfriend, Plaintiff Larry Ford ("Ford") and mother were home. (Id.) An hour or two later, a helicopter was hovering over the house and dozens of San Diego Sheriff's Department deputies were outside with an arrest warrant for Fay. (Id. ¶ 22.) Ford went to the front door, was placed in handcuffs and taken down the street. (Id. ¶ 23.) Fay hid under a bed and Koistra went into the closet of her mother's room. (Id.) Kostra's mother does not hear well and was watching television in her room with the volume on very loud. (Id. ¶ 24.) Defendant Deputy Vail and other deputies entered the home, found Fay and arrested him. (Id. ¶ 25.) Deputy Vail and other deputies continued searching the home and opened the closet door where Koistra was located. (Id. ¶ 26.) When the door opened, Koistra put her hands up. (Id. ¶ 27.) Deputy Vail had a canine, named Hank, who immediately bit Trina's finger and the injury went down to her bone. (Id. ¶ 28.) She then covered her face and began screaming. (Id. ¶ 29.) The canine then bit down on her arm and began pulling her out of the closet and the dog did not release its bite until she was out of the closet. (Id. ¶ 30.) Koistra continued to scream when Deputy Vail told the canine to go after her again. (Id. ¶ 31.) This time, the canine bit down on the front of Koistra's face and one of the dog's teeth punctured through her cheeks. (Id.) The dog then broke her jaw. (Id.) At that point, Koistra urinated on herself and passed out. (Id.) Deputy Vail and other deputies took Koistra into custody. (Id. ¶ 32.)

The original complaint was filed on October 12, 2016. (Dkt. No. 1.) After the Court granted Plaintiffs' ex parte application to amend the complaint, (Dkt. No. 25), on August 16, 2017, Plaintiffs Koistra and Ford filed an amended complaint against the County of San Diego and Deputy Plutarco Vail. (Dkt. No. 26.) The FAC alleges eleven causes of action and include the following:

---

[1]While the FAC claims the person's name is Ray, in fact, the person's name is Rory Fay ("Fay"). (Dkt. No. 34-1 at 6 n. 1.)

1.    First Cause of Action - 42 U.S.C. § 1983 claim for excessive force under the Fourth Amendment;

2.    Second Cause of Action - 42 U.S.C. § 1983 claim for unlawful seizure under the Fourth Amendment;

3.    Third Cause of Action - <u>Monell</u>[2] liability for the County's failure to train and supervise;

4.    Fourth Cause of Action - <u>Monell</u> liability for the County's policies, procedure, customs, and practices;

5.    Fifth Cause of Action - violation of California Civil Code section 52.1;

6.    Sixth Cause of Action - false arrest/false imprisonment;

7.    Seventh Cause of Action -  battery;

8.    Eighth Cause of Action - assault;

9.    Ninth Cause of Action - intentional infliction of emotional distress;

10.    Tenth Cause of Action - negligence; and

11.    Eleventh Cause of Action - negligent infliction of emotional distress.

(Dkt. No. 26.)

**Discussion**

**A.    Request for Judicial Notice**

Defendants filed a request for judicial notice of state court criminal documents including an appearance on a warrant against Koistra dated January 21, 2016, a felony complaint against Fay filed on January 19, 2016, a plea of guilty by Fay filed on February 27, 2017, and Koistra's probation hearing/sentencing held on July 31, 2013. (Dkt. No. 34-2.)  Plaintiffs have not filed an opposition.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a Court may consider exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint whose authenticity no party questions.  <u>See</u> <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007); <u>Lee v. City of Los Angeles</u>,

---

[2]<u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658 (1978).

250 F.3d 668, 688–689 (9th Cir. 2001); <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment.").

The state court documents are not attached to the FAC or incorporated by reference in the FAC. Thus, the Court considers whether the documents are subject to judicial notice. Courts may only take judicial notice of adjudicative facts that are "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

"On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" <u>Lee</u>, 250 F.3d at 690 (quoting <u>Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.</u>, 181 F.3d 410, 426–27 (3rd Cir. 1999)); <u>Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.</u>, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); <u>In re High-Tech Employee Antitrust Litig.</u>, 856 F. Supp. 2d 1103, 1108 (N.D. Cal. 2012) (same). Facts or findings made by a state court contained in other court orders or documents may not be judicially noticed for the truth of the matters asserted. <u>Lasar v. Ford Motor Co.</u>, 399 F.3d 1101, 1117 n.14 (9th Cir. 2005) (declining to take judicial notice of findings made in another state court proceeding "because [defendants were] offering the factual findings contained in the order for the purpose of proving the truth of the factual findings contained therein[ ]").

In <u>Lee</u>, the Ninth Circuit reversed the district court's Rule 12(b)(6) dismissal of the complaint taking judicial notice of the truth of disputed factual matters by relying

- 4 -

on the contents of the Waiver of Extradition form and the transcript of an extradition hearing. Lee, 250 F.3d 668 at 689-90.

Caselaw dictates that the Court may take judicial notice of the existence of the state court documents but cannot take judicial notice of the truth of the facts contained in the state court documents. Based on their arguments, Defendants seek to have the Court consider the truth of facts contained in the state court documents. Therefore, the Court DENIES Defendants' request for judicial notice of the truth of the facts contained in the state court filings.

## B.    Federal Rule of Civil Procedure 12(b)(b)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir.

2009) (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff.  al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

## C.    Plaintiff Larry Ford's Claims against Defendant Deputy Vail

Defendants argue that all claims by Larry Ford against Deputy Vail must be dismissed as a matter of law because Deputy Vail had no contact with Ford.  Plaintiffs do not oppose this argument.

The FAC complains that "Ford went to the front door and was placed in handcuffs and taken down the street by DOES 1-25." (Dkt. No. 26, FAC ¶ 23.)  The FAC alleges claims by Ford against Deputy Vail under the second cause of action for an unlawful seizure, fifth cause of action pursuant to California Civil Code section 52.1, sixth cause of action for false arrest/false imprisonment, ninth cause of action for intentional infliction of emotional distress and tenth cause of action for negligence.[3] Since there are no allegations that Deputy Vail had any interaction with Ford, these claims by Ford against Deputy Vail must be dismissed.  Accordingly, the Court GRANTS Defendants' motion to dismiss Larry Ford's claims against Deputy Vail.

## D.    42 U.S.C. § 1983

### 1.    First Cause of Action

The FAC alleges an excessive force claim by Koistra against Deputy Vail. (Dkt.

---

[3]Defendant also claims that the eleventh cause of action for negligent infliction of emotional distress should also fail as a matter of law; however, Ford does not allege a cause of action under that claim. (Dkt. No. 26, FAC at 18.)

No. 26, FAC ¶¶ 33-36.)

Defendants argue that the facts in this case concerning the use of a canine do not amount to an unconstitutional application of excessive force. Plaintiff Koistra opposes arguing that the facts alleged assert a cause of action for excessive force and Defendants are improperly asserting facts not contained in the FAC. In reply, while conceding that the Court cannot consider Koistra's deposition testimony on a motion to dismiss, Defendants nonetheless argue that the assertions in the FAC are false based on Koistra's testimony.

The use of a police dog in a § 1983 case is subject to an excessive force analysis. Mendoza v. Block, 27 F.3d 1357, 1362 (9th Cir. 1994) (analyzing under clearly established prong of qualified immunity). For a claim of excessive force, a plaintiff must establish that the defendant, acting under color of state law, violated his or her Fourth Amendment rights by using unreasonably excessive force. See Graham v. Connor, 490 U.S. 386, 396 (1989). To state an excessive force claim, a plaintiff must allege facts showing that the officer's conduct was "objectively unreasonable in light of the facts and circumstances confronting them." Id. at 397. In determining whether an officer's conduct is objectively unreasonable, the Court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." Miller v. Clark Cnty., 340 F.3d 959, 964 (9th Cir. 2003). In evaluating reasonableness, courts should consider (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect actively resisted arrest or attempted to escape. Graham, 490 U.S. at 396.

Here, Koistra alleges that when Deputy Vail opened the closet door, she put her hands up. (Dkt. No. 26, FAC ¶ 27.) The canine immediately bit Koistra's finger down to the bone. (Id. ¶ 28.) At this point, she covered her face and began to scream. (Id. ¶ 29.) Deputy Vail then allowed his canine to bite her arm while pulling her out of the closet. (Id. ¶ 30.) Koistra continued screaming when Deputy Vail told the canine to

go after her again.  (Id. ¶ 31.)  The canine bit down on her face, punctured her cheeks and then broke her jaw.  (Id.)

These facts, as pled, give rise to a claim of excessive force as the facts demonstrate that the officer's conduct was "objectively unreasonable in light of the facts and circumstances confronting them."  Id. at 397.  Koistra was not a suspect, had not committed a crime, was not armed and dangerous but had her arms up, and was not actively resisting arrest or trying to escape.  See Graham, 490 U.S. at 396.  Despite these facts, Deputy Vail allowed the canine to attack her three separate times causing severe injuries.  Defendants improperly rely on the facts contained in the state court documents, which have been denied, and Koistra's deposition testimony[4] to support their argument.  The Court declines to consider these facts that are not alleged in the FAC.  Defendant has failed to demonstrate that the allegations in the FAC for excessive force have not stated a claim.  Thus, the Court DENIES Defendants' motion to dismiss the excessive force claim.

## 2.    Second Cause of Action

Plaintiffs Koistra and Ford allege claims of unreasonable seizure against Deputy Vail and Doe Defendants.  (Dkt. No. 26, FAC ¶¶ 37-40.)

Defendants next argue that the unreasonable seizure allegation in the second cause of action fails because Ford was not arrested and Koistra was on probation at the time of the incident and waived her Fourth Amendment rights.  Plaintiffs do not oppose the motion to dismiss as to Koistra but oppose the motion as to Ford.  In reply, Defendants argue that not only the second cause of action but the sixth cause of action for false arrest/false imprisonment must also be dismissed as to Koistra because she was arrested for admittedly violating her probation.

As to Koistra, Defendants again improperly rely on the truth of the probation/sentencing document as to Koistra in state court arguing she waived her Fourth Amendment rights while on probation.  Despite Defendants' failure to

---

[4]The transcript of Koistra's deposition is not attached to the opposition.

demonstrate that the FAC fails to state a claim for unreasonable seizure, Koistra has not filed an opposition on this issue. Therefore, the Court GRANTS Defendants' motion to dismiss Koistra's claim for unreasonable seizure for failing to oppose. See Local Civ. R. 7.1(f)(3)(b) ("[t]he opposition must contain a brief and complete statement of all reasons in opposition to the position taken by the movant . . . ."); Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (affirming grant of an unopposed motion to dismiss under local rule by deeming a pro se litigant's failure to oppose as consent to granting the motion).

As to Ford, the FAC alleges that he "went to the front door and was placed in handcuffs and taken down the street" by "DOES 1 through 25, inclusive", (Dkt. No. 26, FAC ¶ 23), and later claims he was unlawfully arrested without a warrant or probable cause to believe he committed a crime. (Id. ¶ 38.) "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975). A Fourth Amendment seizure arises "[w]henever an officer restrains the freedom of a person to walk away." Tennessee v. Garner, 471 U.S. 1, 7 (1985); Terry v. Ohio, 392 U.S. 1, 16 (1968) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). "A seizure occurs even when an unintended person or thing is the object of the detention or taking." Brower v. Cnty. of Inyo, 489 U.S. 593, 596 (1989).

Defendants improperly argue the merits of the claim for unlawful seizure on a motion to dismiss contending that "the interaction with Ford was, at worst, a temporary detention while law enforcement completed their search of the home" and "Ford's interaction with law enforcement during the incident seemed voluntary, which does not implicate any constitutional claim at all", (Dkt. No. 34-1 at 11). The Court must look at the allegations in the FAC which alleges that Ford was placed in handcuffs and taken away down the street by Doe Defendants. The Court concludes that Plaintiffs have alleged a seizure to implicate the Fourth Amendment as to Ford. The Court DENIES

Defendants' motion to dismiss the unreasonable seizure claim as to Ford.

**E.     Third and Fourth Causes of Action -Municipal Liability as to the County**

The FAC asserts a Monell claim for municipal liability for failure to train and supervise its "deputies to handle the usual and recurring situations with which they must deal", (Dkt. No. 26, FAC ¶¶ 41-57), and the existence of "policies, procedures, customs, and practices" of failing "to investigate or document complaints of previous incidents of unlawful conduct and furthermore, to officially claim that such incidents were justified and proper." (Id. ¶ 62.)

Defendants argue that Plaintiffs' allegations do not sufficiently allege Monell liability for failure to train and also for a pattern or practice on the part of the County as the allegations are not supported by any facts. Plaintiffs oppose relying on pre-Iqbal and Twombly Ninth Circuit authority that held that "bare allegations" of Monell claims are sufficient to state a claim. See Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002) (quoting Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988) which held that municipal liability under § 1983 is sufficient if the claim is "based on nothing more than a bare allegation"); Lee, 250 F.3d at 683 (quoting Karim-Panahi, 839 F.2d at 624).

Cities, counties and other local government entities are subject to claims under 42 U.S.C. § 1983. Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978). While municipalities, their agencies and their supervisory personnel cannot be held liable under § 1983 on any theory of respondeat superior or vicarious liability, they can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs. Monell, 436 U.S. at 691-693. Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. at 694. Plaintiffs must establish that "the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [they] suffered." AE ex rel.

Hernandez v. Cnty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012) (citing Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007)).

The elements of a Monell claim are (1) plaintiff was deprived of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (quoting Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997)). A public entity and supervisory officials may be held liable when "implementation of . . . official policies or established customs inflicts the constitutional injury" or when a failure to act amounts to "deliberate indifference to a constitutional right" or when "an official with final policy-making authority . . . ratifies a subordinate's unconstitutional decision or action. Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1249 (9th Cir. 2010).

A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008); Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990); see also Bouman v. Block, 940 F.2d 1211, 1231-32 (9th Cir. 1991). In other words, a custom is a widespread and longstanding practice that "constitutes the standard operating procedure of the local government entity." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional

method of carrying out policy." Id. (citations omitted).

As to failure to train, the United States Supreme Court has held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."). A section 1983 plaintiff alleging a policy of failure to train peace officers must show: (1) he/she was deprived of a constitutional right; (2) the local government entity had a training policy that amounts to deliberate indifference to constitutional rights of persons with whom its peace officers are likely to come into contact; and (3) his/her constitutional injury would have been avoided had the local government unit properly trained those officers. Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007).

The standard "must demonstrate a 'conscious' or 'deliberate' choice on the part of a municipality in order to prevail on a failure to train claim." Flores v. Cnty. of Los Angeles, 758 F.3d 1154, 1158 (9th Cir. 2014). Deliberate indifference is established when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Clouthier, 591 F.3d at 1249. Similarly, a failure to supervise that is "sufficiently inadequate" may amount to "deliberate indifference." Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989). Mere negligence in training or supervision, however, does not give rise to a Monell claim. Dougherty v. City of Corvina, 654 F.3d 892, 900 (9th Cir. 2011).

Prior to Twombly and Iqbal, the "bare allegation" pleading standard under Karim–Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 (9th Cir. 1988) was

applied to municipal liability claims in the Ninth Circuit. <u>Karim-Panahi</u>, held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" <u>Id.</u> (citing <u>Shah v. Cnty. of Los Angeles</u>, 797 F.2d 743, 747 (9th Cir. 1986)).

Since <u>Twombly</u> and <u>Iqbal</u>, district courts have held that <u>Karim-Panahi</u> is no longer binding and apply the pleading standard announced in <u>Twombly</u> and <u>Iqbal</u>. <u>See</u> <u>Young v. City of Visalia</u>, 687 F. Supp. 2d 1141, 1148 (E.D. Cal. 2009) ("In light of <u>Iqbal</u>, it would seem that the prior Ninth Circuit pleading standard for <u>Monell</u> claims (i.e. 'bare allegations') is no longer viable"); <u>Canas v. City of Sunnyvale</u>, No. C 08–5771 JF (PSG), 2011 WL 1743910, at *5 (N.D. Cal. Jan. 19, 2011) (stating that <u>Karim–Panahi</u> and similar cases that applied the "bare allegation" standard "no longer are controlling in the post-<u>Iqbal/Twombly</u> era"); <u>Warner v. Cnty. of San Diego</u>, No. 10cv1057 BTM (BLM), 2011 WL 662993, at *3 (S.D. Cal. Feb. 14, 2011) ("Since [<u>Karim–Panahi</u>], <u>Twombly</u> and <u>Iqbal</u> have made it clear that conclusory allegations that merely recite the elements of a claim are insufficient for 12(b)(6) purposes"). The Ninth Circuit has also applied <u>Twombly</u> to <u>Monell</u> claims. <u>Dougherty v. City of Covina</u>, 654 F.3d 892, 900-01 (9th Cir. 2011) (applying <u>Twombly</u> to a <u>Monell</u> claim); <u>see also</u> <u>al–Kidd v. Ashcroft</u>, 580 F.3d 949, 974 (9th Cir. 2009) (stating that <u>Iqbal</u> clarified that the pleading standard described in <u>Twombly</u> applies to civil rights cases).

After <u>Iqbal</u>, "[a]llegations of <u>Monell</u> liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur." <u>Young v. City of Visalia</u>, 687 F. Supp. 2d 1155, 1163 (E.D. Cal. 2010).

The FAC alleges that an unidentified "final policymaker" ratified the alleged wrongful conduct of Deputy Vail and that "policies, procedure, customs and practices

called for the refusal of County . . . to investigate or document complaints of previous incidents of unlawful conduct. . . ." (Dkt. No. 26, FAC ¶¶ 61-62.) Plaintiffs argue and assert that the County has a policy, custom, usage and practice of using excessive force on persons; unlawfully seizing persons; unlawfully searching persons; falsely imprisoning persons; unlawfully seizing private property and ejecting persons from private residences; unlawfully searching private residences; fabricating/destroy/concealing/altering evidence in criminal actions and "framing" persons in order to falsely and maliciously convict innocent persons; interfering with persons' constitutionally protected right to free speech; interfering with persons' rights to remain in their private residences; and covering unlawful and tortious conduct by the County of San Diego Sheriff's Department personnel. (Id. ¶ 9; Dkt. No. 36 at 17-18.)

As to failure to train and supervise, the FAC asserts that the County failed to train its officers to the usual and recurring situations with which they must deal. (Dkt. No. 26, FAC ¶ 44.) The County was deliberately indifferent to the obvious consequences of its failure to train its officers adequately. (Id. ¶ 45.) The failure to train was the moving force that caused their injury. (Id. ¶ 46.) The County and Deputy Vail regularly use excessive force in detaining potential suspects such that the practice constitute customs, practices and policies that are widespread and/or well-settled. (Id. ¶ 49.) The county has failed to properly train their officers, deputies, employees, officer, managers and supervisors concerning the legal requirements and protections applicable to persons as set forth in the Constitution. (Id. ¶ 50.) It has failed to educate their respective officers, deputies, employees about the "dangers and obvious consequences of falsely arresting individuals and using excessive force on individuals." (Id. ¶ 51.) The failure to train is evidence of deliberate indifference to Plaintiffs' rights. (Id. ¶ 52.)

For both claims, the FAC merely presents a recitation of the elements of Monell causes of action based on policy, practice or custom, and failure to train and supervise and does not provide any supporting facts. See Dougherty, 654 F.3d at 901 (complaint

was a "formulaic recitation of a cause of actions's elements" and no facts alleged concerning key elements of the Monell claims). Thus, the Court GRANTS Defendants' motion to dismiss the Monell claim for policy, custom or practice, and failure to train and supervise.

**F.      Qualified Immunity as to Deputy Vail**

Defendant Deputy Vail contends that the two § 1983 claims for excessive force against him by Koistra are barred by qualified immunity.[5]  Plaintiffs oppose.

Government officials who perform discretionary functions generally are entitled to qualified immunity from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).  The United States Supreme Court has presented a two-part analysis for determining qualified immunity claims, which the court may address in any order. Pearson, 555 U.S. at 236.  The doctrine of qualified immunity protects government officials from liability for civil damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. al–Kidd, 563 U.S. 731, 735 (2011).

Under the first prong, "the court determines whether the facts alleged, construed in the light most favorable to the injured party, establish the violation of a constitutional

---

[5]Deputy Vail also argues that Koistra's unreasonable seizure claim under § 1983 should also be dismissed under qualified immunity.  Since the Court grants Defendants' motion to dismiss the unreasonable seizure claim, the Court need not address the qualified immunity issue on that claim.

right." <u>Dunn v. Castro</u>, 621 F.3d 1196, 1200 (9th Cir. 2010) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  As to the second prong, "the court decides whether the right is clearly established such that a reasonable government official would have known that 'his conduct was unlawful in the situation he confronted.'" <u>Id.</u> at 1199 (quoting <u>Saucier</u>, 533 U.S. at 202).  Requiring the alleged violation of law to be "clearly established" "balances. . . the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson</u>, 555 U.S. at 231.

   **1.**  **Whether the Facts Alleged Show Deputy Vail's Conduct Violated a Constitutional Right**

  The test for whether force is excessive is "objective reasonableness." <u>Graham v. Connor</u>, 490 U.S. 386, 398 (1989).  In assessing reasonableness, the courts should consider: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect actively resisted arrest or attempted to escape. <u>Id.</u> at 396.  The "standard requires us to balance the amount of force applied against the need for that force." <u>Deorle v. Rutherford</u>, 272 F.3d 1272, 1279 (9th Cir. 2001).  Moreover, where force is not needed, any force used is constitutionally unreasonable. <u>Fontana v. Haskin</u>, 262 F.3d 871, 880 (9th Cir. 2001); <u>Thornton v. City of Macon</u>, 132 F.3d 1395, 1400 (11th Cir. 1998) ("Under the circumstances, the officers were not justified in using any force, and a reasonable officer thus would have recognized that the force used was excessive.")

  As set forth above, Plaintiff Koistra alleges a cognizable excessive force claim against Defendant Deputy Vail.  Deputy Vail allowed the canine to attack her three separate times causing severe injuries even though Koistra was not a suspect, had not committed a crime, was not armed and dangerous, and was not actively resisting arrest or trying to escape. <u>See</u> <u>Graham</u>, 490 U.S. at 396.  Koistra even had her arms up when the closet door opened.  (Dkt. No. 26, FAC ¶ 27.)  Taking these facts as true and construing them in the light most favorable to Koistra, Deputy Vail acted unreasonably

and violated Koistra's constitutional right to be free from excessive force.

## 2. Whether the Right was Clearly Established

Under the second prong, the Court must consider whether the alleged violation of Deputy Vail's use of excessive force and unreasonable seizure "was clearly established at the time of the officer's alleged misconduct." <u>S.B. v. Cnty. of San Diego</u>, 864 F.3d 1010, 1015 (9th Cir. 2017). "[T]he court decides whether the right is clearly established such that a reasonable government official would have known that 'his conduct was unlawful in the situation he confronted.'" <u>Dunn</u>, 621 F.3d at 1199 (quoting <u>Saucier</u>, 533 U.S. at 202). The United States Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." <u>Mullenix v. Luna</u>, –U.S.–, 136 S. Ct. 305, 308 (2010) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011)). Recently, the Supreme Court reiterated that "'clearly established law' should not be defined 'at a high level of generality." <u>White v. Pauly</u>, 137 S. Ct. 548, 552 (2017) (quoting <u>Ashcroft</u>, 563 U.S. at 742). Instead, "the clearly established law must be 'particularized' to the facts of the case." <u>Id.</u> (concluding that appellate court failed to point to a case where an officer acting under similar circumstances as the officer in question was held to have violated the Fourth Amendment).

In <u>Mendoza</u>, the Ninth Circuit held that there is clearly established law that excessive force applies to deputies' use of a police dog. <u>Mendoza v. Block</u>, 27 F.3d 1357, 1362 (9th Cir. 1994). In discussing the standard of clearly established law, the court explained that "no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control." <u>Id.</u> (affirming district court's denial of qualified immunity where law was clearly established, but officer's conduct was not objectively reasonable). In <u>Watkins</u>, the Ninth Circuit held that it is clearly established that excessive duration of the dog bite and the encouragement of a continuation of the attack could constitute excessive force in violation of the Fourth

Amendment. <u>Watkins v. City of Oakland</u>, 145 F.3d 1087, 1093 (9th Cir. 1998). In <u>Watkins</u>, the court affirmed the district court's denial of summary judgment on qualified immunity where the officer allowed the canine to continue to bite the suspect until he showed his hands and while the suspect was surrounded by police officers with guns drawn. <u>Id.</u> at 1090, 1093. Similarly, the Eleventh Circuit has held that no reasonable officer could believe that the use of a dog to attack and bite the plaintiff, who immediately submitted to the police when he was discovered, did not pose a threat of bodily harm and did not attempt to flee or resist arrest, was lawful force. <u>Preister v. City of Riviera Beach, Fla</u>, 208 F.3d 919, 927 (11th Cir. 2000).

Koistra claims she had her arms up when the canine bit down on her arm and pulled her out of the closet. Then Deputy Vail allegedly told the canine to attack her again which resulted in the canine fracturing her jaw and puncturing her cheek. A reasonable officer would have known that the use of a canine to apprehend Koistra, when the targeted suspect Fay had been apprehended, there was no probable cause that Koistra had committed any crime, and the fact she was unarmed and not resisting, and had her hands up, would be a violation of her Fourth Amendment right to be free from excessive force. <u>See</u> <u>Watkins</u>, 145 F.3d at 1093.

Given the facts alleged in the FAC, and construing them in the light most favorable to Koistra, a reasonable officer in Deputy Vail's position would have "fair warning" that his conduct violated the Fourth Amendment's prohibition against excessive force. Accordingly, the Court DENIES Defendants' motion to dismiss Koistra's § 1983 excessive force claim against Deputy Vail based on qualified immunity.

**G.    State Common Law Causes of Action**

While Defendants initially argue that the state common law causes of action should be dismissed, it appears they have dropped their arguments. In their motion, Defendants argue that the common law state claims as to the County must be dismissed under the Government Claims Act because a public entity is immune from suit except

as provided by statute. Cal. Gov't Code § 815(a). In opposition, Plaintiffs argue that they do not seek to impose direct liability against the County but assert that the County is vicariously liable for injuries proximately caused by Deputy Vail within the scope of his employment pursuant to California Government Code section 815.2[6]. In reply to Plaintiffs argument, Defendants merely acknowledge Plaintiffs' assertion that they are only pursuing claims against the County based on vicarious liability and do not dispute Plaintiffs' assertion. Therefore, the Court DENIES Defendants' motion to dismiss the state common law causes of action as to the County.

Instead, in their reply, Defendants argue for the first time, that all Plaintiffs' state law claims against Deputy Vail fail because he is immune from liability under California Government Code section 820.2.

New arguments raised in a reply need not be considered by the district courts. See Zamani v. Carnes,, 491 F.3d 990, 997 (9th Cir. 2007); United States v. Bohn, 956 F.2d 208, 209 (9th Cir.1992) (noting that courts generally decline to consider arguments raised for the first time in a reply brief); United States v. Boyce, 148 F. Supp. 2d 1069, 1085 (S.D. Cal. 2001) ("This argument was not presented in their moving papers and therefore should not be considered now, as it is improper for a party to raise a new argument in a reply brief."). Since the argument concerning Government Code section 820.2 was raised for the first time in Defendants' reply and Plaintiff has not had an opportunity to address this argument, the Court declines to consider the argument. Since Plaintiffs will be granted leave to file a second amended complaint, Defendants may raise the issue if they file another motion to dismiss. Thus, the Court DENIES Defendants' motion to dismiss the sixth, seventh, eighth, ninth, tenth and eleventh

---

[6]Section 815.2 provides "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.; Robinson v. Solano Cnty., 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) ("California ... has rejected the Monell rule and imposes liability on counties under the doctrine of respondeat superior for acts of county employees; it grants immunity to counties only where the public employee would also be immune").

causes of action.

**H.    California Civil Code section 52.1**

Defendants contend that the claim for violation of California Civil Code section 52.1 cannot be asserted against the County as there is no express statutory authority to allow claims under section 52.1 to be asserted against a public entity.  Next, they argue that section 52.1 also fails as to Deputy Vail because Plaintiffs fail to allege a separate violation of a constitutional right.  In response, Plaintiffs argue that they have stated a claim for a violation of Civil Code section 52.1 citing <u>Chaudhry v. City of Los Angeles</u>, 751 F.3d 1096, 1105-06 (9th Cir. 2014) which held that liability under section 52.1 can be based on the same facts as the underlying constitutional violation.

California Civil Code section 52.1 allows a private civil cause of action "if a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."  Cal. Civ. Code § 52.1.

In <u>Chaudhry</u>, the Ninth Circuit reversed the district court's dismissal under Rule 12(b)(6) a claim under section 52.1 because section 52.1 does not require proof of discriminatory intent and the defendants "conceded that a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under 52.1."  <u>Chaudhry v. City of Los Angeles</u>, 751 F.3d 1096, 1105-06 (9th Cir. 2014).

District courts have interpreted <u>Chaudhry</u> for the proposition that a section 52.1 claim may be based on the same underlying constitutional violation instead a showing of "threats, intimidation, or coercion" separate and distinct from a constitutional violation.   <u>Rodriguez v. Cnty. of Los Angeles</u>, 96 F. Supp. 3d 990, 998 (C.D. Cal. 2014); <u>Garlick v. Cnty. of Kern</u>, 167 F. Supp. 3d 1117 (E.D. Cal. 2016) ("Contrary to Defendants' assertion, this Court has found that if a plaintiff makes factual allegations showing a constitutional violation based on excessive force, a plaintiff need not, in

addition, introduce independent evidence showing threats, intimidation, or coercion.")
In Rodriguez, the district court noted that its holding also complies with California
Supreme Court and Court of Appeals precedent. Id. at 999 (citing Venegas v. Cnty. of
Los Angeles, 32 Cal. 4th 820, 827, 843 (2004) (permitting a § 52.1 claim to proceed
where the coercive conduct was based on the constitutional violation itself)); Bender v.
Cnty. of Los Angeles, 217 Cal. App. 4th 968, 977 (2013) (rejecting a broad
interpretation that requires a plaintiff show "threats, intimidation, or coercion"
independent from a violation of the federal constitution).

      The cases cited by Defendants requiring that a section 52.1 cannot be based on
a claim of excessive force alone all pre-date Chaudhry. See William v. Cnty. of
Riverside, No. 13-1954 DDP(DTBX), 2014 WL 1095909, at *2-3 (C.D. Cal. Mar. 19,
2014); Justin v. City & Cnty. of San Francisco, C05-4812 MEJ, 2008 WL 1990819, at
*9 (N.D. Cal. May 5, 2008). The Court agrees with post-Chaudhry district court cases
holding that an excessive force claim alone can allege a claim for a violation under
section 52.1.

      As to the County, it does not appear that Plaintiffs allege a section 52.1 claim
against the County, and appears to specifically exclude the County in paragraph 72 of
the FAC. (See Dkt. No. 26, FAC ¶¶ 68-73.)

      Because Defendants' argument is without merit, the Court DENIES Defendants'
motion to dismiss the section 52.1 cause of action as to Deputy Vail.

## I.    Leave to Amend

      Leave to amend, whether or not requested by the plaintiff, should be granted
unless amendment would be futile. Schreiber Distrib. Co., 806 F.2d at 1401. Plaintiffs
seek leave to amend in the event the Court dismisses any of their claims. The Court
concludes that it would not be futile to allow leave to amend and GRANTS Plaintiffs'
request for leave to amend the FAC. See id.

### Conclusion

      Based on the above, the Court GRANTS in part and DENIES in part Defendants'

    [16CV2539-GPC(AGS)]

motion to dismiss, and GRANTS Plaintiffs' leave to file a second amended complaint. Plaintiffs shall file a second amended complaint within seven (7) days of the filed date of this order. The hearing set for October 20, 2017 shall be **vacated**.

IT IS SO ORDERED.

DATED: October 19, 2017

HON. GONZALO P. CURIEL
United States District Judge

[16CV2539-GPC(AGS) ]