# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINA KOISTRA; and LARRY FORD,<br><br>　　　　　　　　Plaintiffs,<br>　v.<br><br>COUNTY OF SAN DIEGO; PLUTARCO VAIL; and DOES 1 through 50, inclusive,<br><br>　　　　　　　　Defendants. | CASE NO. 16cv2539-GPC(AGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Dkt. No. 44.] |

Before the Court is Defendants County of San Diego and Plutarco Vail's motion to dismiss the second amended complaint ("SAC"). (Dkt. No. 44.) Plaintiffs filed an opposition and Defendants filed a reply. (Dkt. Nos. 48, 49.) Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss the SAC.

## Background

Around January 8, 2016, Plaintiff Trina Koistra ("Koistra") went to a nail salon in El Cajon, California. (Dkt. No. 43, SAC ¶ 15.) She was waiting for a friend to pick her up; however, her ride never showed up. (Id. ¶ 16.) By chance, she saw an acquaintance named "Rory Fay" who told her he could get her a ride home. (Id. ¶ 17.) Fay was able to find a ride home for Plaintiff from a third person, and the three of them went to Koistra's home. (Id. ¶ 18.) Koistra got home close to 9 p.m. (Id. ¶ 19.) Since

- 1 -  [16CV2539-GPC(AGS)]

| | |
|---|---|
| 1 | it was late, Fay asked if he could sleep at her house, and she agreed. (Id. ¶ 20.) |
| 2 | Koistra's boyfriend, Plaintiff Larry Ford ("Ford") and mother were also home. (Id.) |
| 3 | Hours later, a helicopter was hovering over the house and dozens of San Diego |
| 4 | Sheriff's Department deputies were outside the home. (Id. ¶ 21.) The deputies |
| 5 | apparently had an arrest warrant for Fay. (Id. ¶ 22.) Ford went to the front door, was |
| 6 | placed in handcuffs by Doe Defendants and taken down the street. (Id. ¶ 23.) Koistra |
| 7 | went into the closet of her mother's room. (Id. ¶ 24.) Kostra's mother does not hear |
| 8 | well and was watching television in her room with the volume on very loud. (Id. ¶ 25.) |
| 9 | Defendant Deputy Vail and other Doe Defendants entered the home to clear the house. |
| 10 | (Id. ¶ 26.) Deputy Vail entered the home with a canine and was holding him by the |
| 11 | collar as they went through the house. (Id. ¶ 27.) The deputies were in stack formation |
| 12 | as they cleared the house but then Deputy Vail and the dog broke from formation and |
| 13 | went to Georgia's room. (Id. ¶29.) Koistra was partially inside the closet because the |
| 14 | closet door was only partially closed. (Id. ¶ 30.) Koistra's legs were protruding out of |
| 15 | the closet. (Id. ¶ 31.) Without a warning, Deputy Vail ordered the canine to "search" |
| 16 | the room. (Id. ¶ 32.) The dog apparently indicated that someone may be inside the |
| 17 | closet. (Id. ¶ 34.) Without warning, Deputy Vail further opened the partially closed |
| 18 | closet door and instructed the canine to search inside the closet. (Id. ¶ 35.) As the |
| 19 | canine went into the closet, Koistra's hands were already in the air and she told Deputy |
| 20 | Vail that she was unarmed. (Id. ¶ 36.) The canine bit down on Koistra's finger which |
| 21 | penetrated down to her bone. (Id. ¶ 37.) The canine then released his bite and bit down |
| 22 | on her left hand. (Id.) She then covered her face and began screaming. (Id. ¶ 38.) The |
| 23 | canine then bit down on her arm and began pulling her out of the closet, and it did not |
| 24 | release its bite until she was out of the closet. (Id. ¶ 39.) The bite to her arm caused |
| 25 | a large and deep larceration. (Id.) As the canine dragged Koistra out of the closet, |
| 26 | Deputy Vail did not pull the animal off of Koistra but instead encouraged the canine |
| 27 | and said "good boy." (Id. ¶ 40.) The canine then released the bite and bit down on her |
| 28 | face which punctured through Koistra's cheek. (Id. ¶ 41.) The canine then released the |

bite and bit down on Koistra's skull, and then bit down on her jaw, breaking her jaw. (Id. ¶ 42.) The canine then pulled Koistra by the mouth for about twelve feet. (Id. ¶ 43.) One of the bites to Koistra's face was done with such force that one of the canine's teeth broke off inside of her mouth. (Id. ¶ 44.) The canine attacked Plaintiff for about 30 seconds while Deputy Vail stood by and encouraged it. (Id. ¶ 45.) At that point, Koistra urinated on herself and passed out. (Id. 46.) Deputy Vail and other deputies took Koistra into custody. (Id. ¶ 47.)

Ford was in the backseat of a patrol car during the incident and remained there for about an hour. (Id. ¶¶ 48, 49.) Ford was then taken to the house where he remained in custody while the deputies searched the house. (Id. ¶ 50.)

The original complaint was filed on October 12, 2016. (Dkt. No. 1.) After the Court granted Plaintiffs' ex parte application to amend the complaint, (Dkt. No. 25), on August 16, 2017, Plaintiffs Koistra and Ford filed an amended complaint ("FAC") against the County of San Diego and Deputy Plutarco Vail. (Dkt. No. 26.) After the Court granted in part and denied in part Defendants' motion to dismiss the FAC, Plaintiffs filed a second amended complaint ("SAC"). (Dkt. No. 43.) The SAC alleges nine causes of action and include the following:

    1.     First Cause of Action - 42 U.S.C. § 1983 claim for excessive force under the Fourth Amendment by Koistra against Defendants Vail and Doe Defendants;

    2.     Second Cause of Action - 42 U.S.C. § 1983 claim for unlawful seizure under the Fourth Amendment by Ford against Doe Defendants;

    3.     Third Cause of Action - Monell[1] liability as to the County's policies, procedure, customs, and practices by Plaintiffs against County and Doe Defendants;

    4.     Fourth Cause of Action - violation of California Civil Code section 52.1 by Plaintiffs against all Defendants;

---

[1] Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978).

|   |   |   |
|---|---|---|
| 1 | 5. | Fifth Cause of Action - false arrest/false imprisonment by Plaintiffs against all Defendants; |
| 3 | 6. | Sixth Cause of Action - battery by Koistra against all Defendants; |
| 4 | 7. | Seventh Cause of Action - assault by Koistra against all Defendants; |
| 5 | 8. | Eighth Cause of Action - intentional infliction of emotional distress by Plaintiffs against all Defendants; and |
| 7 | 9. | Ninth Cause of Action - negligence by Plaintiffs against all Defendants. |

(Dkt. No. 43.)

In their motion, Defendants move to dismiss all claims by Plaintiff Ford against Defendant Deputy Vail, and the third cause of action under Monell. Plaintiffs oppose.

**Discussion**

**A.    Federal Rule of Civil Procedure 12(b)(b)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for

a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

**B.     Plaintiff Larry Ford's Claims against Defendant Deputy Vail**

In the Court's prior order on Defendants' motion to dismiss, the Court explained that since there were no allegations that Deputy Vail had any interactions with Ford, the claims by Ford against Deputy Vail must be dismissed, and the Court granted Defendants' motion to dismiss Larry Ford's claims against Deputy Vail.

In their motion, Defendants argue that Plaintiffs did not cure the deficiency in the SAC and Ford continues to allege violations against Deputy Vail even though there are no allegations that Ford had any contact with him. In response, Plaintiffs assert that Ford is not pursuing any claims against Deputy Vail.

Despite Plaintiffs' assertion, the allegations in the fourth, fifth, eighth and ninth causes of action generally allege that both Plaintiffs assert causes of actions against all Defendants without specifying which Plaintiff asserts a claim against which Defendant. While Plaintiffs claim they do not seek any claims by Ford against Deputy Vail, the SAC is not clear. Therefore, the Court restates its prior ruling and GRANTS Defendants' motion to dismiss Ford's claims against Deputy Vail.

**C.     Municipal Liability as to the County**

In the Court's prior order, it granted Defendants' motion to dismiss the Monell claims because the FAC merely presented a recitation of the elements of Monell causes of action without any supporting facts. (Dkt. No. 42 at 14-15.) In their motion, Defendants argue that Plaintiffs did not cure the deficiencies and continue to rely on bare conclusory allegations without any factual support. Plaintiffs assert they have sufficiently asserted a claim under Monell.

Cities, counties and other local government entities are subject to claims under 42 U.S.C. § 1983. Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978). While municipalities, their agencies and their supervisory personnel cannot be held liable under § 1983 on any theory of respondeat superior or vicarious liability, they can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs. Monell, 436 U.S. at 691-693. Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. at 694. Plaintiffs must establish that "the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [they] suffered." AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012) (citing Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007)).

The elements of a Monell claim are (1) plaintiff was deprived of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (quoting Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997)).

A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008); Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990); see also Bouman v. Block, 940 F.2d 1211, 1231-32

(9th Cir. 1991). In other words, a custom is a widespread and longstanding practice that "constitutes the standard operating procedure of the local government entity." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Id. (citations omitted).

After Iqbal, "[a]llegations of Monell liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur." Young v. City of Visalia, 687 F. Supp. 2d 1155, 1163 (E.D. Cal. 2010).

The SAC alleges that a "final policymaker . . . ratified the individual deputy and defendants' act . . . knew of and specifically approved the individual officer defendants' acts." (Dkt. No. 43, SAC ¶ 62.) The "policies, procedures, customs and practices called for the refusal of County . . . to investigate or document complaints of previous incidents of unlawful conduct. . . ." (Id. ¶ 63.) Moreover, the San Diego Sheriff's Department has a custom, practice and policy that "when a canine is given the order to 'search', the canine will bite anyone that the canine encounters. The canines are not trained to decipher between a suspect, a victim, a child, a disabled person, etc. If the canine finds a human being, the canine will bite that person without any consideration into whether or not that person poses a threat to anyone." (Id. ¶ 66.) This custom, practice and policy violates the Fourth Amendment because it "encourages, permits and ratified the use of serious and deadly force upon an individual without considering any of the *Graham v. Connor* factors." (Id. ¶ 67.) The County was deliberately indifferent as the policy, custom and practice of allowing canines to "search" encourages and allows the use of serious and deadly force upon

individuals that do not pose a threat. (Id. ¶ 64.) As a result of this custom, practice and policy, Plaintiff was physically and emotionally injured. (Id. ¶ 68.)

The SAC identifies the challenged policy/custom, asserts why the policy/custom is deficient, explains how the policy/custom caused harm to Koistra, and how the policy/custom amounted to deliberate indifference. These allegations sufficiently allege a claim under Monell. See Young, 687 F. Supp. 2d at 1163. Thus, the Court DENIES Defendants' motion to dismiss the Monell claim for policy, custom or practice.

Next, Defendants also move to dismiss Ford's claims against the County under Monell arguing that Ford was not bitten by the canine and had no interactions with Deputy Vail and there are no allegations of any policy or custom that impacted the conduct directed at Ford. Ford's inclusion in the Monell claim may have been inadvertence by Plaintiffs. Plaintiffs do not address this argument. The Court agrees with Defendants that the Monell claim does not address any facts involving Ford. Therefore, the Court GRANTS Defendants' motion to dismiss Ford's Monell claim against the County.

## Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss. The Court GRANTS Defendants' motion to dismiss as to Ford's claims against Defendant Deputy Vail and Ford's Monell claim against the County. The Court DENIES Defendants' motion to dismiss Koistra's Monell claim against the County. The hearing set for December 15, 2017 shall be **vacated**.

IT IS SO ORDERED.

DATED: December 12, 2017

HON. GONZALO P. CURIEL
United States District Judge